UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re                                                      Chapter 7

     VLADIMIR OSTASHKO,                       Case No. 03-26845-ess

         Debtor.

-----------------------------------------------------------------x

ROBERT J. MUSSO, Trustee of the Estate of
Vladimir Ostashko,

         Plaintiff,

    -against-                                     Adv. Pro. No. 04-1256-ess

VLADIMIR OSTASHKO, TANYA OSTASHKO,
ZURITTA-TEKS, LTD., and HARNIK &
FINKELSTEIN,

         Defendants.

-----------------------------------------------------------------x

### MEMORANDUM DECISION DENYING IN PART TANYA OSTASHKO'S MOTION FOR SUMMARY JUDGMENT

This case began on December 18, 2003 (the "Petition Date"), with the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against Vladimir Ostashko (the "Debtor") by Zuritta-Teks, Ltd. ("Zuritta-Teks"). The Debtor, who lives in Moscow, Russia, consented to the entry of an Order for Relief by affidavit sworn to on April 13, 2004, and the Court entered an Order for Relief on April 20, 2004. On April 21, 2004, Robert J. Musso (the "Trustee") was appointed by the Office of the United States Trustee as interim Chapter 7 trustee and has since qualified as permanent trustee.

*The Motion for Relief from the Automatic Stay*

On February 29, 2004, Tanya Ostashko, then the Debtor's estranged wife, moved for an order dismissing this case under Section 707(a) of the Bankruptcy Code; or alternatively, granting relief from the automatic stay under Sections 362(d)(1) and (d)(2) of the Bankruptcy Code to permit entry of judgment and execution of an October 23, 2003, Decision After Inquest of the New York Supreme Court (the "Decision After Inquest") awarding her a 100 percent interest in certain marital assets including the marital home, valued at $890,000, the net proceeds from the sale of a Florida vacation home of $100,000, surplus proceeds from the tax sale of an undeveloped lot in Florida of $16,939.68, and an apartment in Moscow valued by the Debtor at $75,000 (the "Marital Assets"); or alternatively, imposing a constructive trust in her favor on the Marital Assets.

The matter came before the Court for hearing on April 20, 2004 (the "April 20 Hearing"), before the entry of the Order for Relief.  At the April 20 Hearing, relief was granted to the extent of modifying the automatic stay to permit Tanya Ostashko to seek entry of a final judgment in the matrimonial action (the "State Court Judgment"), with that relief to become effective after the appointment of a trustee so that the trustee could determine whether to pursue an appeal of the State Court Judgment.  The parties were directed to submit an order on consent.  On April 29, 2004, before the Court entered an order modifying the automatic stay, the State Court Judgment was signed, and on May 5, 2004, it was entered by the New York Supreme Court.  The matter again was heard by the Court on May 11, 2004, and further relief was granted by order dated May 19, 2004, modifying the automatic stay *nunc pro tunc* to permit the New York Supreme Court to sign and enter the State Court Judgment in accordance with the Decision After

Inquest.

<u>*The Adversary Proceeding*</u>

On May 20, 2004, the Trustee commenced this adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint").  The Trustee seeks to avoid the interest of Tanya Ostashko in property owned by the Debtor and to have that property turned over to him.  The Trustee also seeks to avoid the interest of Zuritta-Teks in the proceeds of the sale of certain real estate owned by the Debtor and to have those funds turned over to him.

On June 21, 2004, Tanya Ostashko filed an answer, cross-claims against the Debtor, Zuritta-Teks, and Harnik & Finkelstein, and counterclaims against the Trustee.  By her first counterclaim, Tanya Ostashko seeks a declaration that the Marital Assets are not property of the Debtor's bankruptcy estate.  By her second counterclaim, Tanya Ostashko seeks a declaration that the Marital Assets are subject to a constructive trust in her favor.  By her first cross-claim and third counterclaim, Tanya Ostashko seeks a declaration that Zuritta-Teks should look to the Debtor's assets located in Russia to satisfy its claim, and that its claim should be subordinated to hers.  By her second cross-claim, Tanya Ostashko seeks a declaration that she is entitled to the Marital Assets free and clear of any liens or claims of Zuritta-Teks and Harnik & Finkelstein.

On July 13, 2004, Zuritta-Teks filed an answer to the Complaint.  On June 28, 2004, the Trustee filed a reply to Tanya Ostashko's counterclaims.  On July 29, 2004, Zuritta-Teks and Harnik & Finkelstein filed a reply to Tanya Ostashko's cross-claims.

On July 29, 2004, the Trustee filed a motion for a default judgment against the Debtor on the third cause of action of the Complaint which seeks an order directing the Debtor to turn over an apartment (the "Moscow Apartment") and a 2003 Audi A4 automobile (the "Audi") located

3

in Moscow.  The Debtor did not oppose this motion.  After a hearing on August 17, 2004, the

Trustee was awarded judgment against the Debtor and an order was entered directing the Debtor

to turn over the Moscow Apartment and the Audi.

*The Summary Judgment Motion*

On December 6, 2004, Tanya Ostashko filed a motion for summary judgment (the

"Summary Judgment Motion").  Tanya Ostashko seeks an order declaring that the Marital Assets

are not property of the Debtor's bankruptcy estate by operation of the Decision After Inquest,

which was rendered but not reduced to a judgment before the Petition Date, and that she may

enforce the State Court Judgment and take title to the Marital Assets, including those assets now

held by the Trustee or Zuritta-Teks, and related relief.  Alternatively, Tanya Ostashko seeks an

order declaring that she is the owner of the Marital Assets pursuant to a constructive trust, and

related relief.  In support of the Summary Judgment Motion, Tanya Ostashko filed a

Memorandum of Law (the "Tanya Ostashko Mem."), a Statement Pursuant to Local Bankruptcy

Rule 7056-1, the Affidavit Pursuant to Rule 7056 of David J. Doyaga, and the Reply to Trustee's

and Zuritta-Teks, Ltd.'s Opposition to Motion for Summary Judgment and Tanya Ostashko's

Opposition to Zuritta-Teks, Ltd.'s Cross Motion to Strike, all dated February 18, 2005.

On January 19, 2005, the Trustee filed the affidavit of Robert J. Musso in opposition to

the Summary Judgment Motion, a memorandum of law in opposition to the Summary Judgment

Motion (the "Trustee's Mem."), and the Trustee's Statement of Material Facts pursuant to Local

Bankruptcy Rule 7056-1.  On January 21, 2005, Zuritta-Teks filed a cross-motion to strike

Tanya Ostashko's cross-claims (the "Motion to Strike") and a memorandum of law in opposition

to the Summary Judgment Motion and in support of the Motion to Strike.

The matter came before the Court on April 6, 2005 (the "April 6 Hearing"), at which counsel for Tanya Ostashko, the Trustee, and Zuritta-Teks appeared and were heard on that portion of the Summary Judgment Motion that seeks an order pursuant to Tanya Ostashko's first counterclaim declaring that the Marital Assets are not property of the Debtor's bankruptcy estate by operation of the Decision After Inquest.[1]  After consideration of the submissions, the record before the Court, and the arguments of counsel for Tanya Ostashko, the Trustee, and Zuritta-Teks, and for the reasons stated herein, that portion of the Summary Judgment Motion that seeks an order pursuant to the first counterclaim declaring that the Marital Assets are not property of the Debtor's bankruptcy estate by operation of the Decision After Inquest is denied.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A).  The following are the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7052.

## Background

### *The Matrimonial and District Court Actions*

For more than seven years, the Debtor, Tanya Ostashko, and Zuritta-Teks or its predecessor in interest have been engaged in matrimonial and other litigation in New York Supreme Court, the U.S. District Court for the Eastern District of New York, and now, this Court.  Tanya Ostashko filed for divorce in New York Supreme Court, Richmond County on or about March 3, 1998 (the "Matrimonial Action").  *See* pp. 6-7, *infra*.  The Commercial Bank of

---

[1]  At the request of the parties, the balance of the Summary Judgment Motion and the Motion to Strike of Zuritta-Teks was continued for a further hearing.

Informatics and Computing Technique Development Bank Informtechnika, a Russian bank

("Informtechnika") brought an action against the Debtor in New York Supreme Court, New

York County, on or about November 20, 1998.  Finally, Tanya Ostashko brought a proceeding in

New York Supreme Court, Richmond County, that was ultimately removed to the U.S. District

Court for the Eastern District of New York (the "District Court Action").  *See* pp. 9-11, *infra*.

*See also* Summary Judgment Motion, Exh. B (Decision After Inquest), at 3; *Ostashko v.

Ostashko*, 2002 WL 32068357, at *1 (E.D.N.Y. 2002), *aff'd*, 2003 WL 22477929 (2d Cir. 2003).

As U.S. District Judge Allyne R. Ross observed, "[t]he procedural history of this case is so

byzantine that the lawyers to both sides have difficulty summarizing the labyrinthine path it

followed to the Eastern District of New York."  *Ostashko*, 2002 WL 32068357, at *1.

### *The Matrimonial Action*

Tanya Ostashko and the Debtor were married in Russia in 1992 and moved to the United

States in 1994.  Summary Judgment Motion, Exh. B at 1 (Decision After Inquest).  The Debtor

now lives in Russia, and Tanya Ostashko remains a resident of Staten Island, New York.  *Id*.

Tanya Ostashko filed for divorce in New York Supreme Court, Richmond County on or about

March 3, 1998.  *Id*.  By decision dated December 21, 1998, and order dated February 11, 1999,

in the Matrimonial Action, Tanya Ostashko was awarded exclusive use and possession of the

marital home in Staten Island and a 1996 Chevrolet Blazer automobile, and the Debtor was

directed to pay, among other costs, carrying charges and costs of major repairs to the marital

home.  *Id*. at 2.  The parties were enjoined from transferring, encumbering, or in any other way

disposing of any property in which either party had an interest, except in the ordinary course of

business or as consented to in writing by both parties.  *Id*.  The Debtor was permitted to sell the

Moscow Apartment and Florida vacation home and directed to deposit the net proceeds from the sales in an attorney's escrow account. *Id*. The Debtor was also directed to make monthly payments of $2,500 in temporary maintenance. *Id*.

By order dated May 6, 1999, in the Matrimonial Action, Tanya Ostashko was awarded a money judgment of $19,462.67 in maintenance arrears and $5,000 in counsel fees. *Id*. at 3. The Debtor's motion to vacate or modify the order of maintenance was denied. *Id*. By order dated May 28, 2002, in the Matrimonial Action, Tanya Ostashko was awarded a further money judgment of $125,045.67 in maintenance arrears and was granted leave to seek a judgment for *pendente lite* real estate taxes. *Id*.

Other proceedings were commenced in New York Supreme Court and the U.S. District Court for the Eastern District of New York by creditors of the Debtor seeking to vacate a notice of pendency filed by Tanya Ostashko, and by Tanya Ostashko seeking to vacate a consent judgment entered into by the Debtor and Informtechnika. *Id*. In June 2002, the Matrimonial Action was marked off the calendar pursuant to the parties' stipulation pending conclusion of the District Court Action. Summary Judgment Motion, Exh. F at 1-2 (May 27, 2003, Supreme Court Order). After the District Court Action was concluded, the Matrimonial Action was restored to the court calendar by order dated January 23, 2003, and scheduled for a pretrial compliance conference on March 6, 2003. Summary Judgment Motion, Exh. B at 4-5 (Decision After Inquest). On the same day, Zuritta-Teks' motion to intervene in the Matrimonial Action was heard. *Id*. at 5. On May 27, 2003, Zuritta-Teks' motion to intervene was denied, and by order dated June 19, 2003, Zuritta-Teks' motion for a stay pending appeal was denied by the Appellate Division of New York Supreme Court. *Id*.

7

On June 23, 2003, the New York Supreme Court granted the Debtor's counsel an opportunity to withdraw as counsel in the Matrimonial Action, because the Debtor elected to remain in Russia and appear in the Matrimonial Action only by counsel, and his counsel's retainer agreement, which was not in compliance with 22 N.Y.C.R.R. §§ 1400.2 and 1400.3, reflected that his counsel fees were to be paid by was paid by Zuritta-Teks, not the Debtor. *Id.* On July 1, 2003, an inquest was held and by Decision After Inquest dated October 23, 2003, the court awarded Tanya Ostashko a 100 percent distribution of the Marital Assets and determined that the amount due for maintenance arrears, real estate taxes, and water charges was $211,093.72. *Id.* at 13. The court also directed the Debtor to pay $135,000 for his share of Tanya Ostashko's counsel fees. *Id.* at 14. The court directed that a Judgment and Findings of Fact and Conclusions of Law in accordance with the Decision After Inquest be submitted. *Id.* As noted above, the court entered the State Court Judgment in the Matrimonial Action on May 5, 2004. *See* p. 2, *supra.*

*The District Court Action*

On January 15, 1998, before the Matrimonial Action was commenced, the Debtor secured a loan from Informtechnika in the amount of 5.5 million rubles, or approximately $900,000. *Ostashko,* 2002 WL 32068357, at *9. The Debtor claimed that he took out the loan to pay his creditors, and that "he had assets abroad which could secure the loan."[2] *Id.* The Debtor's credit application included a statement of assets listing the marital home in Staten

---

[2] The District Court found that "[the Debtor's] stated motives for entering into the agreement were not his real motives, and that his actual intent was to secure and place beyond Tanya's reach the cash value of the primary marital assets." *Ostashko,* 2002 WL 32068357, at *9.

Island, the Florida vacation home, the Moscow Apartment, and several vehicles. *Id.* The District Court found that the "value of [the Debtor's] indebtedness equaled the value of his marital estate." *Id.* at *2. In August 1998, the Debtor missed an interest payment, and on November 20, 1998, Informtechnika filed an action against him in New York Supreme Court. *Id.* at *10-*11. On May 3, 1999, the Debtor and Informtechnika entered a stipulation of settlement resolving the dispute for $800,000 (the "Consent Judgment"), or approximately $200,000 less than the value of the Marital Assets. *Id.* at *13.

Tanya Ostashko brought a motion in the Matrimonial Action to enjoin the entry of the Consent Judgment, which was denied on May 11, 1999, without prejudice to the matter being brought before the same justice before whom Informtechnika's lawsuit was pending. *Id.* at *1, *13. On May 6, 1999, Informtechnika sold its interest in the Consent Judgment to Zuritta-Teks for sixteen million rubles. *Id.* at *13. Informtechnika also continued its efforts to satisfy the Consent Judgment with the Marital Assets and on June 21, 1999, Informtechnika filed a motion to vacate the notice of pendency Tanya Ostashko placed on the title to the marital home. *Id.* On August 13, 1999, Tanya Ostashko brought a motion to vacate the Consent Judgment on grounds that it was a fraudulent conveyance in violation of Section 270 of New York Debtor and Creditor Law, and that it violated the February 11, 1999, *pendente lite* relief order. *Id.* The proceedings were combined and on August 31, 1999, the court dismissed Informtechnika's motion to vacate the notice of pendency and granted Tanya Ostashko preliminary relief enjoining Informtechnika from enforcing the Consent Judgment. *Id.* at *1. By order dated October 10, 2000, the court granted Tanya Ostashko's motion to add Zuritta-Teks as a party. *Id.* at *14. On December 1, 2000, Zuritta-Teks removed the action to the District Court. *Id.* at *1.

9

In the District Court Action, the parties addressed the circumstances of the Debtor's loan from Informtechnika. Tanya Ostashko contended "that the loan was never made, that [the Debtor] received $900,000 from cronies of his at Informtechnika, intentionally defaulted, and willingly entered into a consent judgment in order to deprive her of any share of the marital assets." *Id*. at *2. The Debtor contended that he "found himself in financial distress toward the end of 1997," and that he "consolidate[d] his debt by taking out a loan from Informtechnika and paying off his other creditors." *Id*.

After a trial held between November 12 and November 15, 2002, the District Court found "much of [the Debtor's] testimony lacking in credibility." *Id*. at *14. The District Court found:

> [The Debtor] took out the Informtechnika loan because he wanted to recoup in liquid form the value of his marital assets before Tanya could assert a claim to them. Cash would prove much easier to spirit away than a piece of real estate, so the loan seemed attractive as a means of insuring that he could walk away with the entire value of his property. As is corroborated by [the Debtor's] refusal to make maintenance payments and the help he gave to Zuritta-Teks in seizing Tanya's car, the evidence established clearly and convincingly that [the Debtor] has, from the moment he demanded a divorce, intended to make sure that Tanya did not receive any of his assets.

*Id*.

The District Court found that the Consent Judgment was actually fraudulent:

> In entering the loan, [the Debtor] actually intended to defraud, hinder, or delay his wife's claims to the marital assets. The consent judgment, the denouement of the course of events [the Debtor] initiated in January of 1998, was simply the final chapter in his efforts to usurp his wife's ownership interests, liquidate the marital assets, and recoup their entire value for himself. [Informtechnika] knew or should have known of his intent to defraud, delay, or hinder. The consent judgment, as the perhaps unplanned but foreseeable tail end of [the Debtor's] scheme, therefore contains all of the elements necessary to declare a conveyance fraudulent by the terms of § 276.

*Id*. at *21 (footnotes omitted).

10

In addition, the District Court found that the Consent Judgment was constructively fraudulent and in contravention of Sections 273, 273-a, and 275 of New York Debtor and Creditor Law, and that by entering into the Consent Judgment, the Debtor violated the February 11, 1999, order enjoining him from alienating or encumbering the Marital Assets. *Id*. at *21, *28.

Applying Section 279 of New York Debtor and Creditor Law, the District Court set aside the Consent Judgment to the extent necessary to satisfy Tanya Ostashko's claims. *Id*. at *27. These claims had not, at that time, been fixed in the Matrimonial Action. Zuritta-Teks appealed the District Court Decision and, on November 3, 2003, the Second Circuit affirmed, holding that "[f]or the reasons substantially stated by the district court, the consent judgment constituted a fraudulent conveyance in violation of NYDCL § 276." *Ostashko*, 2003 WL 22477929, at *1.

## Discussion

A.    *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56, made applicable to this Adversary Proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *Hassett v. Altai,*

11

*Inc. (In re CIS Corp.)*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249.

B.    *Property of the Estate*

The cornerstone of the bankruptcy process is the creation of a bankruptcy estate from which the debtor's creditors may be paid. A leading treatise on bankruptcy law offers this observation on the significance of "property of the estate":

> Section 541 embodies the essence of the Bankruptcy Code. It creates the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. Property belonging to the estate is protected from the piecemeal reach of creditors by the automatic stay of section 362. It is this central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code. It is from this central core of estate property that the debtor's creditors will be paid.

5 COLLIER ON BANKRUPTCY ¶ 541.01 (15th ed. rev. 2005).

Section 541(a) of the Bankruptcy Code provides:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a). *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). Questions as to whether a debtor has an interest in property sufficient to bring it within the bankruptcy estate are answered by reference to the applicable state law. *See Butner v. United*

12

*States*, 440 U.S. 48, 54 (1979). But questions as to what constitutes property of the estate are answered by reference to federal bankruptcy law. *Cooper v. Frederes (In re Frederes)*, 141 B.R. 289, 291 (Bankr. W.D.N.Y. 1992).

Under New York law, interests in property in connection with a matrimonial action are determined by New York's Domestic Relations Law. Section 236 of the Domestic Relations Law provides in part:

> Except where the parties have provided in an agreement for the disposition of their property . . . the court, in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, and in proceedings to obtain a distribution of marital property following a foreign judgment of divorce, shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment.

N.Y. DOM. REL. LAW § 236(B)(5)(a) (1992). Section 236 was described by the court in *In re Cole*, 202 B.R. 356 (Bankr. S.D.N.Y. 1996):

> [I]n July 1980, New York enacted an equitable distribution law. DRL § 236. Equitable distribution creates a classification of property known as "marital property." Marital property refers to "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, *regardless of the form in which title is held*." DRL § 236, Part B, subd. 1(c) (emphasis added).
>
> Under equitable distribution, the matrimonial court can direct the distribution of marital property between the spouses in the final divorce judgment. DRL § 236, Part B, subd. 5(a).

*Id*. at 359-60.

Another significant principle of bankruptcy law is found in Section 544 of the Bankruptcy Code, which gives the Chapter 7 trustee the ability to avoid certain transactions in order to recover property of the debtor's estate. 11 U.S.C. § 544(a). As noted by one court:

> Section 544 is known in its entirety as the "strong-arm clause" of the Code because of the avoidance power it granted to the trustee. H.R. Rep. No. 595, 95th Cong., 1st Sess. 370 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787. The statute effectively transforms the trustee into "the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor."

*Feldman v. Feldman (In re Feldman)*, 54 B.R. 659, 660 (Bankr. D.N.J. 1985) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D. Miss. 1932)). Thus, property of the estate is subject to the rights of the Chapter 7 trustee as a hypothetical judgment lien creditor and a bona fide purchaser of real property.

C.    *Vesting of Equitable Distribution Rights*

This framework of federal and state law provides the context for the Court to determine whether Tanya Ostashko's equitable distribution rights to the Marital Assets, as decided in the Matrimonial Action, vested before the Petition Date. If her rights vested before the Petition Date, then the Marital Assets did not become part of the Debtor's bankruptcy estate. But if her rights vested after the Petition Date, then the Marital Assets became property of the Debtor's bankruptcy estate, and the Trustee may administer the Martial Assets as part of the Debtor's estate pursuant to his "strong arm" powers under Section 544.

Tanya Ostashko argues that the commencement of this bankruptcy case after the Decision After Inquest was issued but before the State Court Judgment was entered does not alter the effect of that judgment or prevent her from enforcing the State Court Judgment and taking title to the Marital Assets. Summary Judgment Motion ¶ 1. She argues that "once the State court has made a clear and complete Judicial determination (particularly reflected in a written and signed Decision) which directs the submission and/or settlement of the Judgment in

accordance thereof, the entry of the Judgment is ministerial and not stayed." Summary

Judgment Motion ¶ 38. Thus, Tanya Ostashko claims that by operation of the Decision After

Inquest, the Marital Assets are not property of the Debtor's estate. Tanya Ostashko Mem. at 10.

In response, the Trustee argues:

> Every court that has considered the issue of whether an equitable distribution
> award to a non-filing spouse can defeat a trustee's strong arm powers under
> Section 544 has held that unless the non-filing spouse's equitable distribution
> award vested prior to the filing of the bankruptcy petition, the property owned by
> a debtor comes into the estate free of the claims of such spouse and the non-filing
> spouse has no rights to the property superior to those of any other unsecured
> creditor.

Trustee's Mem. at 6. The Trustee relies upon *Ara v. Anjum (In re Anjum)*, 288 B.R. 72 (Bankr.

S.D.N.Y. 2003), and the cases cited therein, for his position that "'until entry of a judgment

dissolving the marriage,' and if a bankruptcy petition is filed prior to the entry of a divorce

judgment, the trustee's status as a hypothetical lien creditor under Section 544 of the Bankruptcy

Code 'cuts off' the non-debtor spouse's rights to the property." *Id.* (quoting *In re Cole*, 202 B.R.

at 360).

The Trustee states:

> [Since] no judgment was entered prior to the date the petition was filed . . .
> [Tanya Ostashko's] rights to the property owned by the Debtor did not vest prior
> to the [Petition Date] and she is not entitled to receive a transfer of any of the
> Debtor's property or to enforce or execute on any judgment. Her rights to the
> property owned by the Debtor are no greater than that of any unsecured creditor
> of the Debtor's estate and there are other creditors in this case. . . . Section 544 of
> the Bankruptcy Code gives the Trustee the rights of a lien creditor without
> knowledge of [Tanya Ostashko's] claims so that all of the Debtor's property
> comes into the estate free of [Tanya Ostashko's] equitable distribution claim to
> that property.

Trustee's Mem. at 7-8.

Tanya Ostashko argues that the filing of this bankruptcy case after the Decision After Inquest but before the State Court Judgment should not divest her of the rights declared and established in the Matrimonial Action and reflected in the Decision After Inquest. Tanya Ostashko Mem. at 1. She distinguishes the circumstances here from those present in the cases cited by the Trustee on grounds that, once the Decision After Inquest was issued in the Matrimonial Action awarding her all of the Marital Assets, the entry of the State Court Judgment was no more than a ministerial act. Tanya Ostashko also relies on several state and federal cases applying New York law that, she argues, support a different result in her case, including *Taylor v. Taylor (In re Taylor)*, 233 B.R. 639 (S.D.N.Y. 1999), *Potter v. Potter (In re Potter)*, 159 B.R. 672 (Bankr. N.D.N.Y. 1993), *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994), *Cornell v. Cornell*, 7 N.Y.2d 164, 196 N.Y.S.2d 98 (1959), *Jayson v. Jayson*, 54 A.D.2d 687, 387 N.Y.S.2d 274 (2d Dep't 1976), and *McDermott v. McDermott*, 119 A.D.2d 370, 507 N.Y.S.2d 390 (2d Dep't 1986). *See* Tanya Ostashko Mem. at 3-5.

The great majority of courts to consider the issue of when, and under what circumstances, rights to marital property vest under New York's Domestic Relations Law have found that such rights vest upon entry of a final judgment, and not before. For example, in *In re Greenwald*, 134 B.R. 729 (Bankr. S.D.N.Y. 1991), a judgment of divorce was entered before the bankruptcy filing. The court found that under applicable state law, the property at issue vested in the non-debtor spouse upon the entry of the judgment, and was not property of the bankruptcy estate. *Id.* at 731. The court observed:

> In New York, a final judgment in a marital action by a court of competent jurisdiction determines the rights between the parties. *Rainbow v. Swisher*, 72 N.Y.2d 106, 527 N.E.2d 258, 531 N.Y.S.2d 775 (1988). Domestic Relations Law

16

> § 236(B)(5)(a) provides in pertinent part that in a marital action the court "shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof *in the final judgment*." *Sperber v. Schwartz*, 139 A.D.2d 640, 527 N.Y.S.2d 279 (2d Dep't 1988) (emphasis in original). In *Leibowits v. Leibowits*, 93 A.D.2d 535, 462 N.Y.S.2d 469, 478 (2d Dep't 1983) (O'Connor, J., concurring), Justice O'Connor noted that "*at no point prior to judgment* does the new law itself create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their union." (emphasis added).

*Id*. at 731 (emphasis in original). *See also Sinha v. Sinha*, 285 A.D.2d 801, 802, 727 N.Y.S.2d 537, 539 (2d Dep't 2001) ("Bankruptcy courts have generally agreed with Justice O'Connor's analysis and have concluded that 'spouses' respective rights in marital property do not vest under New York law * * * until entry of a judgment dissolving the marriage'") (quoting *In re Cole*, 202 B.R. at 360).

More recently, in *Ara v. Anjum (In re Anjum)*, 288 B.R. 72 (Bankr. S.D.N.Y. 2003), the court considered whether a debtor's failure to comply with an equitable distribution of martial property in a postpetition judgment of divorce based on a prepetition stipulation gave rise to a prepetition dischargeable claim, or a postpetiton nondischargeable claim. The court analyzed whether the marital property at issue became property of the estate when the debtor filed his Chapter 7 petition. In so doing, the court surveyed the applicable case law and observed:

> The courts have uniformly held that when a final judgment of divorce has not been entered at the time of a bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general unsecured creditor. As stated by Chief Judge (then Judge) Bernstein in *In re Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996): "The spouses' respective rights in marital property do not vest under New York law, however, until entry of a judgment dissolving the marriage. [Citations omitted] If bankruptcy intervenes before the state court enters the judgment, the trustee's status as hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property, and leaves her with a general unsecured claim." Similarly, in *In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987) Judge Holland held: "Since no equitable distribution award had vested at the time

17

of the filing of the petition, the debtor's property came into the estate free of the claims of the spouse." Concerning the effect of a post-petition divorce judgment, the court said: "To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the non-debtor spouse, such award becomes a claim within the context of 11 U.S.C. § 101(9). The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate." (*Id.*).

*Id*. at 76-77.[3]

The court concluded:

[T]he property which was the subject of the equitable distribution decree became

_____

[3] The court continued:

To the same effect, *see*: *Goldberg v. Hilsen (In re Hilsen)*, 100 B.R. 708, 711 (Bankr. S.D.N.Y. 1989), *rev'd on other grounds*, 119 B.R. 435 (S.D.N.Y. 1990); *In re Lefrak*, 223 B.R. 431, 439 (Bankr. S.D.N.Y. 1998) ("if bankruptcy intervenes prior to the divorce decree, the bankruptcy cuts off the inchoate right in 'marital property,' and leaves the nondebtor spouse with an unsecured claim"); *In re Vann*, 113 B.R. 704, 706 (Bankr. D. Colo. 1990) ("Until a dissolution of marriage is commenced and the spouse takes some affirmative action to perfect her interest in the marital property, her rights are inchoate, and had a judgment lien creditor perfected its lien on the property prior to the spouse's perfection, her rights to the marital property would be subordinate to those of the judgment lien creditor"); *In re Polliard*, 152 B.R. 51, 55 (Bankr. W.D. Pa. 1993) ("Since the Bankruptcy Code gives [the non-debtor spouse] no right of distribution superior to that of any other unsecured creditor, [the non-debtor spouse] will be entitled to a *pro rata* distribution along with other unsecured creditors"); *In re Price*, 154 B.R. 344, 346 (Bankr. N.D. Fla. 1993) (the equitable distribution determination only establishes the non-debtor's claim and such claim is "merely a general unsecured claim against [the] estate"); *Hoffman v. Hoffman*, 157 B.R. 580, 583 (E.D.N.C. 1992), *aff'd*, 998 F.2d 1009, 1993 WL 280359 (4th Cir. 1993) (the non-debtor's equitable distribution claim "is a general unsecured claim which is discharged unless excepted under the provisions of 11 U.S.C. § 523 or unless it is a valid secured claim"). *See also*, Judge Conrad's analysis in *In re Greenwald*, 134 B.R. 729 at 731 (Bankr. S.D.N.Y. 1991) ("The few courts that have addressed the issue . . . have consistently held that prior to [a divorce] judgment the rights of a nondebtor spouse to the debtor's property are no better than that of an unsecured creditor").

*Id*. at 77.

18

> property of the debtor's estate upon the filing of his Chapter 7 petition.  The
> subsequent entry of the Judgment of Divorce for a fixed dollar amount gave rise
> to an unsecured pre-petition claim entitled to share in the liquidated assets of the
> debtor's estate *pari passu* with other pre-petition unsecured claims.

*Id*. at 72-73.

Analyzing Tanya Ostashko's rights to the Marital Assets as if this bankruptcy case had not been filed also suggests that those rights did not vest until entry of the State Court Judgment. If a judgment lien creditor had perfected its lien on the Marital Assets before the entry of the State Court Judgment, it would have taken free and clear of Tanya Ostashko's interests in the Marital Assets.  Under Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of a hypothetical perfected judgment lien creditor as of the Petition Date, and his powers under Section 544 supersede any interests that Tanya Ostashko has.  11 U.S.C. § 544.  The prepetition Decision After Inquest does not overcome the rights of the Trustee, and indirectly, the rights of all of the creditors of the Debtor's bankruptcy estate.

The cases cited by Tanya Ostashko do not lead to a different result.  In *Taylor v. Taylor (In re Taylor)*, 233 B.R. 639 (S.D.N.Y. 1999), the non-debtor spouse commenced a matrimonial action in New York Supreme Court and was awarded, in an oral decision, certain amounts from the debtor's individual retirement account ("IRA") and Keogh retirement account.  *Id*. at 640. *See* Tanya Ostashko Mem. at 4-5.  Before a judgment was "noticed for presentment," the debtor filed a bankruptcy petition.  *In re Taylor*, 233 B.R. at 640.  The debtor moved to avoid the judicial liens on his IRA and Keogh retirement accounts under Section 522(f) of the Bankruptcy Code.  *Id*. at 641.  The bankruptcy court denied the debtor's motion on grounds that the non-debtor spouse's interest in the accounts vested when the oral decision was rendered, before the

19

bankruptcy filing, so that those amounts were not property of the debtor's bankruptcy estate.  *Id.*

The district court agreed, and found:

> [We find] no New York case authority supporting [the debtor's] strained argument that the oral decision . . . could confer no rights upon [the spouse] and that [the spouse's] rights could not vest before formal entry by the court of a final judgment memorializing the oral decision.

*Id*. at 643.  The district court further observed:

> [Even if the non-debtor spouse's rights] would vest only upon the formal entry of the final decree of divorce, it is well established under federal bankruptcy law that such ministerial acts as the entry of final judgment will be accorded their full effect even if the debtor's filing of the bankruptcy petition has already triggered the automatic stay.

*Id*. (citing *Rexnord Holdings*, 21 F.3d at 527-28).

But *In re Taylor* does not control the result here.  In *In re Taylor*, the court addressed a dispute between a non-debtor spouse and an individual debtor without the "strong-arm" avoidance powers of a Chapter 7 trustee.  Here, the Trustee has the status of a judgment lien creditor as of the Petition Date, which places him in a position superior to that of a creditor who does not have a judgment lien.  And in *In re Taylor*, the court was plainly reluctant to reach a conclusion with the effect that the state court's determination would "confer no rights" on the non-debtor spouse.  *Id*.  Here, by contrast, the Decision After Inquest and State Court Judgment confer rights on Tanya Ostashko in that they define her claim in the Debtor's bankruptcy estate.

Tanya Ostashko also argues that *Potter v. Potter (In re Potter)*, 159 B.R. 672 (Bankr. N.D.N.Y. 1993), supports her position that "once the decision of the matrimonial court is rendered, the non-debtor spouse enjoys the vested right in the specific sums awarded by [the State Court]."  Tanya Ostashko Mem. at 4.  There, the bankruptcy court addressed whether the

debtor's former wife's claim to a share of his military pension, pursuant to a Final Judgment of Divorce (the "Decree"), was in the nature of a property interest or a debt. *Id*. at 675. The Decree was entered before the bankruptcy case was commenced, and provided that "'each party shall be entitled to the appropriate interest in the pension of the other as allowed by the Equitable Distribution Law of the State of New York as of this date, with each party [being] responsible to file the appropriate papers to secure payment of such pension rights upon the actual date of retirement.'" *Id*. at 673 (quoting Decree). The debtor subsequently filed a bankruptcy petition, and a Qualified Domestic Relations Order ("QDRO") was entered in the state court. *Id*. at 673-74. The QDRO directed the United States Army to pay the pension benefits awarded by the final judgment of divorce directly to the debtor's former wife. *Id*. at 674.

The bankruptcy court concluded that the debtor's former wife's rights in the pension vested when the final judgment of divorce was entered, and that those rights were in the nature of a property interest, not a debt. The court found:

> While the rights of the non-employee spouse in the pension or retirement fund of the other remain inchoate during the coverture of the marriage . . . upon entry of a judgment of divorce, ownership vests in the spouse to whom such property has been equitably distributed.

> Thus, after entry of the Decree by the state court on May 20, 1991, the [debtor's former wife's] interest in the Debtor's military pension became her sole and separate property under New York law, effectively divesting the Debtor of any proprietary interest in the portion that was transferred to her.

*Id*. at 675 (citations omitted). Thus, *In re Potter*, like the many cases cited above, supports the conclusion that vesting of an equitable distribution award occurs upon the entry of a final judgment.

Tanya Ostashko similarly argues that *McDermott v. McDermott*, 119 A.D.2d 370, 507

21

N.Y.S.2d 390 (2d Dep't 1986), *appeal dismissed*, 69 N.Y.2d 1028, 517 N.Y.S.2d 938 (1987), supports her position. *See* Tanya Ostashko Mem. at 4-5. There, the court considered the former wife's equitable distribution claim to her former husband's New York City Fire Department pension plan under a final judgment of divorce, and the tension between state laws protecting public employee pensions and the Equitable Distribution Law. *McDermott*, 119 A.D.2d at 377-78, 507 N.Y.S.2d at 395-96. But in *McDermott*, as in *In re Potter,* the court's analysis focused on the entry of the final judgment terminating the equitable distribution action. The Appellate Division found:

> Mrs. McDermott began acquiring an interest in the pension from the moment her husband joined the plan. That interest, unenforceable and unallocated as it may have been prior to the divorce action, constituted the seed from which an inchoate interest in the pension emerged as a marital asset when the divorce action began . . . and matured into a true ownership interest when the equitable distribution judgment terminated the action.

*Id*., 119 A.D.2d at 379, 507 N.Y.S.2d at 397 (citation omitted). Thus, *McDermott* confirms that marital property rights, and the transfer of property interests pursuant to the Equitable Distribution Law, "mature into a true ownership interest" upon the entry of a judgment.

Tanya Ostashko further argues that under *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994), the entry of a final judgment after a judicial determination is made is ministerial, so that this Court should conclude that the Decision After Inquest was a sufficient juridical act to vest title in the Marital Assets in Tanya Ostashko. Tanya Ostashko Mem. at 1, 3. In *Rexnord Holdings*, the district court granted the plaintiff's motion for summary judgment in an oral decision and directed that "'judgment be entered in favor of [the plaintiff] in the amount of $12,946,748.'" *Rexnord Holdings*, 21 F.3d at 525 (quoting the district court oral decision).

The court also endorsed its ruling on plaintiff's motion papers. *Id*. at 528. That same day, the defendant filed for bankruptcy protection. *Id*. The next day, the court clerk entered the money judgment against the defendant on the docket. *Id*. at 525. The defendant appealed, asserting, among other things, that the judgment against him should be vacated because it was entered in violation of the automatic stay. *Id*.

Citing cases from several jurisdictions, the Second Circuit held:

While the commencement or continuation of a judicial action or proceeding clearly is subject to the automatic stay of section 362, we do not believe that the simple and "ministerial" act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceedings under section 362(a)(1). . . .

In the present case, the district court "So ordered" the entry of judgment and endorsed [the plaintiff's] motion papers to that effect . . . prior to the filing of [the defendant's] bankruptcy petition later that afternoon. The judicial proceedings were concluded at the moment the judge directed entry of a judgment, a decision on the merits having then been rendered.

*Id*. at 527-28. Thus, *Rexnord Holdings* stands for the proposition that when a decision has been rendered, and a judgment has been "so ordered" on the record and endorsed on the papers, the entry of judgment on the court's docket by the court clerk is a "ministerial act" that does not violate the automatic stay.

Here, by contrast, the court did not "so order" the record, endorse the papers, or direct judgment to be entered by the clerk of the court, but rather, directed Tanya Ostashko to submit a judgment with findings of fact and conclusions of law. And the judgment to be entered was not a "money judgment" to be reviewed and entered by the clerk, but was to provide for relief "other than for money or costs." N.Y. C.P.L.R. 5016(c). The court described the steps to be taken to reduce the Decision After Inquest to a judgment as follows:

> Submit Judgment and Findings of Fact and Conclusions of Law in accordance
> with this Decision and upon Entry of Judgment a copy is to be served on [the
> Debtor] with proof of service of same to be filed with the County Clerk.
> Additionally, consistent with this Decision, Counsel may include any facilitating
> orders to effect the transfer of property from [the Debtor] to [Tanya Ostashko]
> and to release to [Tanya Ostashko] any monies or property held in escrow.

Summary Judgment Motion, Exh. B at 14 (Decision After Inquest). Accordingly, *Rexnord*

*Holdings* does not control the outcome here.

The Court of Appeals decision in *Cornell v. Cornell*, 7 N.Y.2d 164, 196 N.Y.S.2d 98

(1959), and the Second Department's decision in *Jayson v. Jayson*, 54 A.D.2d 687, 387

N.Y.S.2d 274 (2d Dep't 1976), likewise do not require a different result. In those cases, as

Tanya Ostashko acknowledges, one of the parties to a matrimonial action had died before

judgment was entered. *See* Tanya Ostashko Mem. at 5. As noted by the court in *Jayson*,

"[u]nder *Cornell v. Cornell* . . . a judgment can be entered Nunc pro tunc in a divorce action after

the death of one of the parties, if such party was entitled to have had judgment entered while

both parties were living." *Jayson*, 54 A.D.2d at 688, 387 N.Y.S.2d at 275.

Finally, Tanya Ostashko makes two arguments grounded in considerations of equity and

policy. First, Tanya Ostashko argues that the "Debtor's pre-petition misconduct is very relevant

to this Court's determination of whether to grant judgment to [Tanya Ostashko] . . . [p]articularly

here where [there are] only two other creditors who were fully aware of Debtor's conduct, before

they got involved with the Debtor." Summary Judgment Motion ¶ 24. Tanya Ostashko recites a

series of factual findings made in the District Court Decision after trial to argue that, in

substance, the Debtor is not entitled to the protections of a court of equity. *Id*. *See* p. 10, *supra*.

*See also Ostashko*, 2002 WL 32068357, at *6-*15 (finding, among other things, that the

Debtor's testimony was not credible and that the Debtor acted "to make sure that Tanya
[Ostashko] did not receive any of his assets").

The Trustee responds that, as decisions of other courts in similar circumstances show, the
Debtor's "behavior and alleged motives" are irrelevant.  Trustee's Mem. at 7.  In *Lawrence v.
Lawrence (In re Lawrence)*, 237 B.R. 61 (Bankr. D.N.J. 1999), cited by the Trustee, the court
addressed a non-debtor spouse's claim against the estate for equitable distribution under New
Jersey law.  The non-debtor spouse submitted evidence showing "an overwhelming pattern of
diversion of assets by the debtor with the intention of diminishing [her] share of those assets."
*Id*. at 80.  *See* Trustee's Mem. at 7.  The court found:

> The debtor's conduct throughout this case, and in the divorce case, has shown
> total contempt for the rights of [the non-debtor spouse] in the marital estate.  [The
> non-debtor spouse] produced prima facie evidence of his diversion and
> concealment of marital assets, and the debtor's rebuttal evidence on the issues of
> diversion and concealment consisted almost exclusively of his testimony,
> uncorroborated by documentary evidence, as to what became of the missing
> assets. . . . [The] court finds [the debtor's] testimony totally unworthy of belief on
> these issues.

*In re Lawrence*, 237 B.R. at 80.  Notwithstanding the debtor's conduct, the court found that
"where . . . a bankruptcy petition of a spouse holding legal title to marital property precedes a
divorce judgment distributing such property, the rights of the other spouse not sharing legal title
are inferior to those of the title holder's trustee."  *Id*. at 79.

Here, the Debtor's conduct, as found in the District Court Decision, appears to be similar
in some respects to the conduct described by the bankruptcy court in *Lawrence*.  *See* p. 10, *infra*.
*See, e.g., Ostashko*, 2002 WL 32068357, at *14, *21.  And if the question before the Court was
whether the Debtor should receive a benefit at the expense of Tanya Ostashko, it could carry

greater weight in the Court's consideration of the matter.  But here, the competing interests are not Tanya Ostashko and the Debtor, but Tanya Ostashko and the Trustee.  And the Trustee, who stands in the shoes of a hypothetical perfected judgment lien creditor as of the Petition Date, is not affected by the conduct of the Debtor.  Accordingly, as in *Lawrence*, the Debtor's conduct does not provide a basis to conclude that Tanya Ostashko was awarded legal title to the Marital Assets upon the entry of the Decision After Inquest and before a judgment was entered.[4]

Next, Tanya Ostashko argues that it is fundamentally unjust for the Debtor's bankruptcy estate to retain the Marital Assets, because this result will promote and reward the abuse of the bankruptcy process, by "encourag[ing] the use of the Bankruptcy Court as an appellate Court to the State Court by allowing a party to continue with the State Court process, exhausting it to the 'very second' that a judgment is to be entered and, when it is a decision a party does not like, defeat it by filing for Bankruptcy."  Tanya Ostashko Mem. at 1-2.

Tanya Ostashko's concerns about the potential for misuse of the bankruptcy courts and the bankruptcy process are both undoubtedly genuine and well-founded.  At the outset, the *Rooker-Feldman* doctrine provides that "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment."  *Neshewat v. Salem* (*In re Salem*), 290 B.R. 479, 482 (S.D.N.Y. 2003) (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)).  The doctrine is derived from two Supreme Court cases, decided sixty years apart, which give effect to the principle that the federal courts have only original subject matter jurisdiction, and for this

---

[4]  The Court expresses no view as to whether the Debtor's conduct, as found by the District Court, may be relevant to any other claim or argument that Tanya Ostashko may have in this Adversary Proceeding or in the Debtor's bankruptcy case.

reason may not entertain direct or collateral attacks on a state court judgment. *Singleton v. Fifth Third Bank of Western Ohio* (*In re Singleton*), 230 B.R. 533, 536 (6th Cir. B.A.P. 1999) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Under this doctrine, this Court simply may not exercise its limited jurisdiction to reverse or modify a state court judgment.

At the same time, these concerns fall short of providing grounds to conclude that the Marital Assets became Tanya Ostashko's property before a judgment was entered in the Matrimonial Action. As described above, the concept of property of the bankruptcy estate has paramount importance in the Bankruptcy Code. The broad sweep of property of the estate means, for example, that debtors enjoy immediate, and nearly comprehensive, protection as a result of the automatic stay. *See* 11 U.S.C. § 362. As a leading commentator has observed, "the stay provides creditors with protection by preventing the dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution." 3 COLLIER ON BANKRUPTCY ¶ 362.03 (15th ed. rev. 2005). And here, the far-reaching definition of property of the estate operates to bring property into the Debtor's bankruptcy estate that has been the subject of protracted litigation in other courts, including in the Matrimonial Action, to the apparent detriment of the Debtor's creditor and former wife.

But in the main, the broad reach of the Bankruptcy Code's definition of property of the estate, taken together with the principle of equality of distribution, serves to help, not to hinder, creditors, because it increases the amount of property available for distribution to creditors according to the priorities established by the Code. Assets may no longer be diverted or dissipated by an unscrupulous debtor. Nor will assets be subject to the haphazard collection

efforts of creditors who may succeed or fail based only on how quickly they pursue their rights, not on the nature and respective priorities of their claims.  And debtors may not favor some creditors over others based on personal preference or a desire for future advantage.

It also bears mention that Section 544 does not bar Tanya Ostashko's right to be compensated for her claim to the Marital Assets, which was established by the Decision After Inquest and reduced to judgment in the State Court Judgment after this bankruptcy case was filed.  The nature and priority of Tanya Ostashko's claim is not before the Court in this Motion, but may raise issues to be decided under other sections of the Bankruptcy Code.  *See, e.g.*, 11 U.S.C. §§ 510(c), 523(a)(5), 523(a)(15).  And Section 544 does not negate the District Court Decision to the extent that it holds that the Consent Judgment should be set aside to the extent necessary to satisfy Tanya Ostashko's claims.  Here too, that decision, which was rendered by the District Court after a trial and affirmed by the Second Circuit, may well factor in the determination of the respective priority to be afforded to the claim of Zuritta-Teks and Tanya Ostashko in the Debtor's bankruptcy case, among other matters.  *See, e.g.*, 11 U.S.C. §§ 507(a)(7), 510(c).

Based upon the foregoing, the Court finds and concludes that Tanya Ostashko's equitable distribution rights to the Marital Assests did not vest before the Petition Date, and as a result, that the Marital Assets are property of the Debtor's bankruptcy estate.

### Conclusion

For the reasons stated herein, that portion of the Summary Judgment Motion that seeks an order pursuant to the first counterclaim declaring that the Marital Assets are not property of the

Debtor's bankruptcy estate by operation of the Decision After Inquest is denied.  The parties are

directed to settle an order in conformity with this Memorandum Decision.

Dated:   Brooklyn, New York
         June _**1**_, 2005


                                        _**s/Elizabeth S. Stong**_
                                        ELIZABETH S. STONG
                                        UNITED STATES BANKRUPTCY COURT